## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KENNETH CABAN GONZALEZ,
on behalf of himself and others similarly situated,


　　Plaintiff,


v.


SPENCER R. MOORE, in his official capacity as
Commissioner of Georgia Department of
Driver Services, JAMES WOO, in his individual
capacity,


　　Defendants.

Civil Action No.

**COMPLAINT -
CLASS ACTION**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## NATURE OF THE ACTION

1.　　Plaintiff Kenneth Caban Gonzalez is a United States citizen born in

Puerto Rico who applied for a driver's license soon after he established residence

in the State of Georgia. The Department of Driver Services ("DDS") has failed to

issue him a driver's license, to provide him with notice of a decision stating a

reason for non-issuance of the license, and to afford him an opportunity for a

1

hearing. DDS and Defendant James Woo are also arbitrarily and discriminatorily retaining Plaintiff's valid Puerto Rico driver's license and original identity documents that he submitted in support of his application for a Georgia driver's license.

2.      Plaintiff brings this putative class action challenging DDS' unlawful policy and practice of denying notice and an opportunity for a hearing to Puerto Rico-born United States citizens seeking Georgia driver's licenses in violation of the Due Process Clause. Plaintiff also challenges DDS' discriminatory failure to exchange valid Puerto Rico driver's licenses for Georgia driver's licenses as violative of the Privileges and Immunities Clause of Article IV, § 2, cl. 1, and as discrimination based on race, color, or national origin in violation of the Equal Protection Clause and Title VI of the Civil Rights Act of 1964. Further, Plaintiff challenges DDS and Defendant Woo's arbitrary and discriminatory retention of his valid Puerto Rico driver's license and original identity documents in violation of the Fourteenth Amendment.

3.      DDS' policies and practices subject impacted Puerto Rico-born applicants to irreparable harm by depriving them of a protectible property interest in a driver's license that affords them an ability to drive to work, medical appointments, religious worship, educational opportunities, to visit family, to live

independently, to secure employment, and to engage in other important activities of daily living.

4.      DDS' policies and practices expose Plaintiff and members of the putative class to criminal prosecution should they drive without a Georgia driver's license. For a first offense, driving without a license carries a penalty ranging from a minimum fine of $500 to a year of imprisonment.

5.      Plaintiff and members of the putative class will continue to suffer irreparable harm if DDS' policies and practices are not enjoined.

6.      Plaintiff and members of the putative class seek to obtain preliminary and injunctive relief and a declaration that DDS' policies and practices violate the Fourteenth Amendment, the Privileges and Immunities Clause, and Title VI of the Civil Rights Act.

7.      Plaintiff, on his own behalf, also seeks injunctive relief and compensable damages for Defendant Woo's abridgment of his rights under the Due Process Clause.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution, and pursuant to 28 U.S.C. § 1343, because this action seeks to redress the

deprivation, under color of state law, of Plaintiff and putative class members'
constitutional and statutory rights and to secure equitable and other relief for the
violation of those rights.

9.    Plaintiff seeks declaratory and injunctive relief, actual damages, and
any other appropriate relief, pursuant to 28 U.S.C. § § 2201 and 2202; Federal
Rules of Civil Procedure 23, 57 and 65; and 42 U.S.C. § 1983.

10.    Venue is proper under 28 U.S.C. § 1391(b) and Northern District of
Georgia Local Rule 3.1. Defendant Spencer Moore is sued in his official capacity
and his office resides in this District and this Division. Defendant Moore's
challenged policies and practices are pursuant to directives generated and
administered by DDS' headquarters in Conyers, Georgia, which is located within
this District and this Division. Ga. Comp. R. & Reg. R. § 375-1-1-01(2).

## PARTIES

### Plaintiff

11.    Plaintiff Kenneth Caban Gonzalez is a United States citizen born in
Puerto Rico.[1] He currently resides in Hinesville, Georgia.

---

[1] Plaintiff, as permitted by Civil Code of Puerto Rico, 31 L.P.R.A. § 466,
authorizing legitimate children to use both their paternal and maternal last names,
uses both names on his legal documents. The Complaint refers to Plaintiff as Mr.
Caban Gonzalez.

12.    Mr. Caban Gonzalez has a Georgia (non-driver) identification card, which DDS issued on January 18, 2019. DDS has failed, however, to issue a decision and afford an opportunity for a hearing on an earlier application for a driver's license that Mr. Caban Gonzalez submitted on October 31, 2017, more than 600 days before the filing of this Complaint.

**Defendants**

13.    Defendant Spencer R. Moore is the Commissioner of the Georgia Department of Driver Services. Pursuant to O.C.G.A. § 40-16-3(a), "[t]he department shall be under the direction, control, and management of . . . … the commissioner of driver services." Defendant Moore is responsible for policies, rules, directives, and patterns or practices of DDS relative to the issuance of driver's licenses in the State of Georgia. Defendant Moore (hereinafter "Defendant DDS") is sued in his official capacity.

14.    Defendant James Woo, at all times relevant, was employed as an inspector by Defendant DDS in his Office of Investigative Services. Defendant Woo made and/or authorized the decision to arbitrarily and discriminatorily retain Mr. Caban Gonzalez' valid Puerto Rico driver's license and original identity documents.

# LEGAL FRAMEWORK

## A.    Federal REAL ID Act

15.    In 2005, Congress passed the Emergency Supplemental Appropriation Act for Defense, the Global War on Terror, and Tsunami Relief, which, *inter alia*, mandates that "a Federal agency may not accept for any official purpose— [boarding federally regulated commercial aircrafts, accessing Federal facilities, and any other purposes that the Secretary of Homeland Security shall determine]—a driver's license or identification card issued by a State to any person unless the State is meeting [prescribed] requirements." REAL ID Act of 2005, Pub. L. No. 109-13, May 11, 2005, 119 Stat. 231§ 202(a) (codified as 49 U.S.C. § 30301 note) [hereinafter "REAL ID Act"].

16.    The REAL ID Act prescribes standards for the issuance of a State driver's license or identification card. § 202(b); 6 C.F.R. §§ 37.17(a)-(n).

17.    To obtain a REAL ID compliant driver's license or identification card, an applicant must present, and the State must verify the following information:

A) A photo identity document;

B) Documentation showing the person's date of birth;

C) Proof of the person's social security account; and

D) Documentation showing the person's name and address of

principal residence. § 202(c)(1); 6 C.F.R. § 37.11(c)-(g).

18.    The REAL ID Act requires evidence of lawful status, which can be

demonstrated, for example, by "valid documentary evidence that the person is a

citizen or national of the United States." § 202(c)(2)(B). States must verify the

validity and completeness of the evidence of lawful status by contacting the issuing

agency. § 202(c)(3); 6 C.F.R. § 37.13(b)(3).

19.    The State also must confirm the applicant's social security number.

§ 202(d)(5); 6 C.F.R. § 37.13(b)(2).

20.    In sum, an applicant meeting the Act's precepts should receive a

REAL ID compliant State driver's license or identification card.

21.    The Department of Homeland Security is charged with determining a

State's compliance with the REAL ID Act. § 202(a)(2). A State may receive

federal grant money to assist it in complying with the Act. § 204(a).

**B.**    **Georgia's Rules on the Issuance of a Driver's License or Identification Card**

22.    The State of Georgia is compliant with the REAL ID Act. As a result, a driver's license or identification card issued by the State is acceptable to federal agencies.[2]

23.    Under O.C.G.A. § 40-5-20(a), "[n]o person . . . shall drive any motor vehicle upon highways in this state unless such person has a valid driver's license . . . . Any person who is a resident of this state for 30 days shall obtain a Georgia driver's license." The DDS "shall issue to every applicant qualifying therefor a driver's license . . . bear[ing] a distinguishing number assigned to the licensee, a photograph of the licensee [and] the licensee's full legal name." O.C.G.A. § 40-5-28(a).

24.    Similarly, under O.C.G.A. § 40-5-100, DDS shall issue a personal (non-driver) identification card to an applicant who meets the State's 30-day residency requirement and, under § 102, "furnish[es] a birth certificate or other verifiable evidence stating the applicant's birth date." O.C.G.A. §§ 40-5-100, 40-5-102.

---

[2] *See REAL ID Enforcement: Georgia*, U.S. DEP'T OF HOMELAND SEC., https://www.dhs.gov/real-id/georgia (last visited July 1, 2019).

25.    DDS regulations provide that State residency can be substantiated with "two (2) documents . . . dated by the sender . . . within two (2) years prior to the date on which they are presented." Ga. Comp. R. & Regs. § 375-3-1-.02(5)(a).

26.    Further, "[e]ach application must be supported by documentation of the [applicant]'s identity, specifically his or her name and date of birth." § 375-3-1-.02(3). Documents that are acceptable proof of identity and lawful status include a "certified copy of a birth certificate filed with the State Office of Vital Statistics or equivalent agency in the [applicant's] state of birth." §§ 375-3-1-.02(3)(b), 375-3-1-(6)(a)(ii).

27.    Every applicant must also provide documentation of a social security number by presenting a social security card. § 375-3-1-.02(4)(a).

28.    DDS permits an applicant "who hold[s] a valid . . . driver's license issued by another state of the United States or the District of Columbia [to] exchange such license for a Georgia's driver's license." § 375-3-1-.05(1). DDS also accords reciprocity to applicants with "driver's license[s] issued by a foreign country." § 375-3-1-.05(5).

29.    A "person whose driver's license . . . is . . . denied is entitled to appeal [DDS'] decision." Ga. Comp. R. & Regs. § 375-3-3-.04(1). Administrative appeals

must be "received or postmarked within ten (10) days of the effective date of [DDS' decision.]" § 375-3-3-.04(3).

30.    An aggrieved applicant who has exhausted his administrative remedy "shall have the right to enter an appeal in the superior court of the county of his or her residence." O.C.G.A. § 40-5-66(a). The appeal "must be filed within 30 days from the date [DDS] enters its decision or order." *Id*.

31.    Georgia imposes criminal penalties in connection with obtaining a driver's license on "[a]ny person who knowingly makes any false statement, conceals a material fact or otherwise commits a fraud during the driver's license examination." O.C.G.A. § 40-5-125(c). Any person who so acts "shall be guilty of a violation of Code Section 16-10-20," which imposes a fine up to $1,000 or no more than 5 years imprisonment, or both. *Id.*

32.    Georgia also criminalizes any person, except those expressly exempted, for "driving any motor vehicle upon a highway unless such person has a valid driver's license." O.C.G.A. § 40-5-20(a). Any person who violates the code "shall be guilty of a misdemeanor for a first conviction punishable by a fine of not less than $500" or imprisonment. O.C.G.A. § 40-5-121.

**C.    DDS Subjects Puerto Rico-born Applicants to Rules Not Applicable to U.S. Mainland-born Applicants.**

33.    Under a DDS directive, a driver's license or identification card issued in Puerto Rico is not afforded the reciprocity that DDS extends to the same documents issued by any other State or the District of Columbia.

34.    Further, unlike other out-of-state licensees, holders of "Puerto Rico licenses **must** present all required documents . . . and **must** successfully pass the knowledge and road exams before a Georgia license can be issued."[3]

35.    Additionally, DDS will "not accept a birth certificate issued in Puerto Rico prior to July 1, 2010, as proof [of] identity for any purpose." Ga. Comp. R. & Regs. § 375-3-1-.27(1). But DDS will accept, under "the laws of Puerto Rico, only the new Puerto Rico birth certificates issued from July 1, 2010 onward [which are] valid." *Id*.

36.    DDS also requires that accepted birth certificates and other original identity documents submitted by Puerto Rico-born driver's license applicants be retained and flagged for fraud review.

37.    Under another DDS directive, Puerto Rico-born applicants also must answer questions about the island that are not required of United States mainland-

---

[3] *See* DDS Field Operations Manager's Bulletin #122117-02 at 1, obtained in response to a December 4, 2018 Open Records Request (*see* Appendix A).

born applicants, including identifying "what a meat filled with plantain fritter" is called; where a specific beach is located; and "the name of the frog [that is] native only to PR."[4]

## STATEMENT OF FACTS

38.    In August 2017, Mr. Caban Gonzalez arrived in Georgia seeking a better life.

39.    On October 31, 2017, having met the 30-day residency requirement, Mr. Caban Gonzalez applied for a driver's license at the Hinesville Customer Service Center in Liberty County. His father served as an interpreter.

40.    On his application, Mr. Caban Gonzalez averred that he is a United States citizen of Hispanic/Latino racial classification residing, at the time, in Ludowici, Georgia. Mr. Caban Gonzalez also averred that he had an out-of-state driver's license issued in Puerto Rico.

41.    To establish his identity and lawful status, Mr. Caban Gonzalez submitted an original birth certificate issued by the Commonwealth of Puerto Rico Department of Health on April 7, 2014—compliant with DDS regulations

---

[4] *See* DDS Puerto Rico Interview Guide at 3-4, obtained in response to a December 4, 2018 Open Records Request (*see* Appendix B).

requiring a post-2010 Puerto Rico birth certificate. Mr. Caban Gonzalez also

provided his original valid Puerto Rico driver's license.

42.     To meet the residency requirement, Mr. Caban Gonzalez submitted a

paystub for October 2017. He also submitted his social security card.

43.     Consistent with DDS' discriminatory directive treating Puerto Rico-

born applicants differently than those born on the United States mainland,

Defendant DDS retained Mr. Caban Gonzalez' driver's license, his original birth

certificate, and his social security card. Defendant DDS, through an interpreter,

informed Mr. Caban Gonzalez that he would be notified when to pick up his

original identity documents.

44.     On or about November 3, 2017, Mr. Caban Gonzalez received a text

message from Defendant Woo. In the text message, Defendant Woo asked Mr.

Caban Gonzalez "[to] come into the DDS office IN [sic] Savannah for an

interview."

45.     Instead of an interview, Mr. Caban Gonzalez was placed under arrest

for allegedly proffering false documents. He was later charged in Liberty County

Superior Court with one count of first degree forgery in violation of O.C.G.A. §16-

9-1, and one count of "[f]alse statements and writing, concealment of facts and

fraudulent documents in matters within jurisdiction of state or political

subdivisions" in violation of O.C.G.A. §16-10-20. Defendant Woo has not returned Mr. Caban Gonzalez's valid Puerto Rico driver's license and original identity documents.

46.     In or about June 2018, Mr. Caban Gonzalez obtained a new birth certificate from Puerto Rico and a new social security card.[5] With these documents, he applied for a State identification card.

47.     On January 18, 2019, Defendant DDS issued Mr. Caban Gonzalez a REAL ID compliant Georgia (non-driver) identification card. Despite accepting his documents, Defendant DDS has yet to issue Mr. Caban Gonzalez a driver's license.

48.     While Mr. Caban Gonzalez' Georgia identification card allows him to enter a federal building and board a plane, it is not a driver's license. Without a driver's license, Mr. Caban Gonzalez cannot find a job in construction, which he

---

[5] Mr. Caban Gonzalez cannot request another Puerto Rico driver's license because the REAL ID Act prohibits issuance of a driver's license to an individual who has a valid license unless that license has been terminated. *See* REAL ID Act § 202(d)(6).

has experience in, because the industry, like many others, requires possession of a valid driver's license.[6]

49.    Because Mr. Caban Gonzalez cannot drive, it is difficult and often impossible for Mr. Caban Gonzalez to take his newborn daughter to her pediatric appointments, attend to his own medical needs, go grocery shopping, visit family and friends, attend religious services, and participate in social activities.

50.    Mr. Caban Gonzalez also faces a real threat of criminal prosecution should he dare to drive again without a driver's license. Before he applied for a State driver's license, Mr. Caban Gonzalez was cited for driving without a Georgia driver's license. At the time the citation was issued, Mr. Caban Gonzalez had his valid Puerto Rico driver's license and was driving home from work when he was stopped. Mr. Caban Gonzalez is unable to pay a $681 fine imposed for the traffic citation because he cannot find a job without a driver's license.

---

[6] Reinforcing the importance of a driver's license, 2017 census data reveals that 89.5% of working-age Georgians are highly dependent on and get to work by driving. BUREAU OF THE U.S. CENSUS, 2013-2017 AMERICAN COMMUNITY SURVEY 5-YEAR ESTIMATES (*available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=CF) (last visited July 1, 2019). The mean travel time is twenty-eight minutes. *Id.* Over 95% of working-age Georgians own at least one car. *Id.*

51.     It has been more than 600 days since Mr. Caban Gonzalez applied for a driver's license. Yet Defendant DDS has not issued him a driver's license or provided him with a notice explaining why it believes the original identity documents he provided are false, and has not explained why Mr. Caban Gonzalez cannot be issued a driver's license, or what, if any, additional documents he needs to submit to obtain a driver's license. Nor has Defendant DDS explained why documents it deemed sufficient to issue a REAL ID compliant Georgia identification card are insufficient to provide Mr. Caban Gonzalez with a driver's license.

52.     Upon information and belief, Defendant DDS has a policy and practice of denying notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses. Defendant DDS enforced this policy and practice against Mr. Caban Gonzalez and, in doing so, denied him due process of law. Upon information and belief, Defendant DDS enforces this policy and practice across the State against Puerto Rico-born applicants for Georgia driver's licenses.

53.     Upon information and belief, Defendant DDS has a policy and practice of arbitrarily and discriminatorily retaining original identity documents provided by Puerto Rico-born applicants for Georgia driver's licenses without

affording them due process of law. Defendants DDS and Woo enforced this policy and practice against Mr. Caban Gonzalez thereby denying him due process of law. Upon information and belief, Defendant DDS enforces this policy and practice across the State against Puerto Rico-born applicants for Georgia driver's licenses.

54.     Upon information and belief, Defendant DDS has a policy and practice of often failing to exchange valid Puerto Rico driver's licenses for Georgia driver's licenses. Defendant DDS enforced this policy and practice against Mr. Caban Gonzalez and, in doing so, abridged his rights conferred under the Privileges and Immunities Clause, and engaged in race, color, or national origin discrimination in violation of the Equal Protection Clause and Title VI of the Civil Rights Act. Upon information and belief, Defendant DDS enforces this policy and practice across the State against Puerto Rico-born applicants for Georgia driver's licenses.

55.     Upon information and belief, Defendant DDS' policies and practices of denying notice and an opportunity for a hearing, of often failing to issue driver's licenses to holders of valid Puerto Rico driver's licenses, and of arbitrarily and discriminatorily retaining original identity documents provided by Puerto Rico-born applicants do not extend to U.S. mainland-born applicants for Georgia driver's licenses.

56.     Upon information and belief, the State of Georgia received and/or continues to receive federal grant money to assist it in complying with the requirements of the REAL ID Act.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this putative action on behalf of himself and all those similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A), and 23(b)(2).

58.     The class is defined as:

> Puerto Rico-born applicants for a Georgia driver's license, who established residence in the State from July 2017 through the present, but whose applications remain unlawfully undecided by DDS and/or whose Puerto Rican identity documents are unlawfully retained for an unreasonable amount of time.

59.     The precise size of the class is unknown but likely exceeds forty individuals.

60.     Plaintiff and members of the putative class are geographically dispersed throughout Georgia, are likely of low-income status, and do not possess the resources necessary to litigate individual cases. Additionally, the prosecution of separate actions may create a risk of inconsistent adjudications, making a class action the superior and most economical means of resolving the questions of law common to the claims of the class.

61.    There are common questions of law and fact common to the class including:

i)    Whether Defendant DDS' policy and practice of denying notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses violates the Due Process Clause of the Fourteenth Amendment;

ii)    Whether Defendant DDS' policies and practices of failing to decide the applications of Puerto Rico-born applicants, and of arbitrarily and discriminatorily retaining original identity documents that they provide constitute discrimination on account of race, color, ethnicity, ancestry or national origin in violation of the Equal Protection Clause;

iii)    Whether Defendant DDS' discriminatory treatment of Puerto Rico-born applicants violates the Privileges and Immunities Clause; and

iv)    Whether Defendant DDS' discriminatory treatment of Puerto Rico-born applicants excludes them from participation in, denies the benefits of, or subjects them to discrimination under a program or activity receiving federal financial assistance on the ground of race, color, or national origin in violation of Title VI of the Civil Rights Act.

62.    These claims are typical of the claims of the class. Defendant DDS has policies and practices denying notice and an opportunity for a hearing, and

19

arbitrarily and discriminatorily retaining original identity documents submitted by Puerto Rico-born applicants. Defendant DDS' discriminatory policies and practices apply with equal force to all members of the putative class.

63.    Plaintiff will fairly and adequately represent the interests of all members of the proposed class because he seeks relief for himself and on behalf of the class as a whole and has no interest antagonistic to other members of the class. Plaintiff, like members of the putative class, has been subjected to Defendant DDS' unlawful policies and practices. Plaintiff and the putative class members seek a declaration that Defendant DDS' policies and practices are unconstitutional, violate federal statutory law, and that Defendant DDS be required to issue driver's licenses to which they are lawfully entitled under federal and state law.

64.    Plaintiff and the putative class will fairly and adequately be represented by their counsel. LatinoJustice PRLDEF routinely litigates civil rights cases and has substantial expertise in class action litigation to vindicate civil rights, particularly for those of Latin American and Spanish speaking Caribbean descent. Similarly, the Southern Center for Human Rights has extensive experience litigating constitutional law and civil rights cases, including in the Eleventh Circuit Court of Appeals.

65.     Defendant DDS has acted and will act on grounds generally applicable to the class in denying notice and an opportunity for a hearing, and in arbitrarily and discriminatorily retaining original documents submitted by Puerto Rico-born applicants. Defendant DDS' policies and practices are unlawful, and enjoining their enforcement is appropriate with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT ONE
**Violation of Due Process Under the Fourteenth Amendment;**
**42 U.S.C. § 1983**
**(Defendant DDS)**

66.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

67.     Plaintiff, for himself and on behalf of the putative class, asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

68.     The Fourteenth Amendment provides:

"No State shall . . . deprive any person of life, liberty or property without due process of law." U.S. CONST. amend. XIV.

69.     Fundamental due process requires notice and an opportunity to be heard on a protectible property interest in a driver's license.

70.    Defendant DDS enforces a policy and practice of denying notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses.

71.    At all relevant times, Defendant DDS has acted under color of state law.

72.    By failing to provide Plaintiff and members of the putative class with notice and an opportunity for a hearing, Defendant DDS deprives them of their property interest without due process of law in violation of the Due Process Clause.

73.    By arbitrarily and discriminatorily retaining original identity documents proffered by Plaintiff and members of the putative class without affording them notice and an opportunity for a hearing, Defendant DDS also violates the Due Process Clause.

**COUNT TWO**
**Violation of Due Process Under the Fourteenth Amendment;**
**42 U.S.C. § 1983**
**(Defendant Woo)**

74.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 55 of the Complaint as though fully set forth herein.

75.    Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment.

76.     At all relevant times, Defendant Woo has acted under color of state law.

77.     By arbitrarily and discriminatorily retaining Plaintiff's valid Puerto Rico driver's license and original identity documents without affording him notice and an opportunity for a hearing, Defendant Woo abridged Plaintiff's right to due process under law.

78.     As a result of the foregoing, Plaintiff was deprived of his property interest, suffered emotional distress, loss of property, costs, and expenses, and was otherwise damaged and injured.

**COUNT THREE**
**Violation of Equal Protection Clause Under the Fourteenth Amendment;**
**42 U.S.C. § 1983**
**(Defendant DDS)**

79.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

80.     Plaintiff, for himself and on behalf of the putative class, asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

81.     Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

82.    Defendant DDS enforces deliberate policies and practices of denying notice and an opportunity for a hearing, of often failing to issue driver's licenses to holders of valid Puerto Rico driver's licenses, and of arbitrarily and discriminatorily retaining original identity documents provided by Puerto Rico-born applicants for Georgia driver's licenses.

83.    Plaintiff and members of the putative class belong to a protected class by reason of their race, color, ethnicity, ancestry and/or national origin.

84.    Defendant DDS' policies and practices deliberately target Puerto Rico-born applicants and subject them to differential treatment that is not applied to United States mainland-born applicants.

85.    Defendant DDS enforces policies and practices with the intent to discriminate against, with deliberate indifference to, or reckless disregard for the rights of Puerto Rico-born applicants.

86.    In addition to or in the alternative, Defendant DDS' policies and practices were motivated by race-based stereotyping or implicit bias against Puerto Ricans.

87.    At all relevant times, Defendant DDS has acted under color of state law.

88.    By subjecting Plaintiff and members of the putative class to discriminatory policies and practices, Defendant DDS denies them equal protection of the law on account of race, color, ethnicity, ancestry and/or national origin in violation of the Equal Protection Clause.

**COUNT FOUR**
**Violation of the Privileges and Immunities Clause, Article IV, § 2, cl. 1;**
**42 U.S.C. § 1983**
**(Defendant DDS)**

89.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

90.    Plaintiff, for himself and on behalf of the putative class, asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Privileges and Immunities Clause, Article IV, § 2, cl. 1, of the U.S. Constitution.

91.    The Privileges and Immunities Clause declares "[t]he citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the Several States." U.S. CONST. art. IV, § 2, cl. 1.

92.    Defendant DDS enforces deliberate policies and practices of denying notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses, of often failing to issue driver's licenses to holders of valid Puerto Rico driver's licenses, and of arbitrarily and discriminatorily retaining original identity documents provided by these applicants.

25

93.    Defendant DDS enforces a deliberate policy and practice of often failing to exchange valid Puerto Rico driver's licenses and identification cards issued by the Commonwealth of Puerto Rico.

94.    At all relevant times, Defendant DDS has acted under color of state law.

95.    By subjecting Plaintiff and members of the putative class to the alleged unlawful policies and practices, Defendant DDS denies them privileges and immunities afforded to U.S. mainland-born citizens in violation of the Privileges and Immunities Clause.

## COUNT FIVE
### Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 42 U.S.C. § 1983
### (Defendant DDS)

96.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

97.    Plaintiff, for himself and on behalf of the putative class, asserts a claim for violation of Title VI of the Civil Rights of 1964, 42 U.S.C. § 2000d, and pursuant to 42 U.S.C. § 1983.

98.    Under 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

99.    Defendant DDS enforces deliberate policies and practices of denying notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses, of often failing to issue driver's licenses to holders of valid Puerto Rico driver's licenses, and of arbitrarily and discriminatorily retaining original identity documents provided by these applicants.

100.    Defendant DDS enforces a deliberate policy and practice of failing to issue driver's licenses and identification cards to Puerto Rico-born applicants who meet the requirements of the REAL ID Act.

101.    Defendant DDS enforces its policies and practices with the intent to discriminate against, with deliberate indifference to, or reckless disregard for the rights of Puerto Rico-born applicants.

102.    In addition to or in the alternative, Defendant DDS' policies and practices were motivated by race-based stereotyping or implicit bias against Puerto Ricans.

103.    At all relevant times, Defendant DDS received or continues to receive, directly or indirectly, federal grant money to assist it in complying with the requirements of the REAL ID Act. Defendant DDS acted under color of state law.

104.    By subjecting Plaintiff and members of the putative class to its

policies and practices, Defendant DDS, on the ground of race, color, or national

origin, excludes Puerto Rico-born applicants from participation in, denies them the

benefits of, and subjects them to discrimination in receipt of a benefit conferred

under a program or activity receiving federal financial assistance.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class he seeks to represent, request that the

Court:

a)    Assume jurisdiction over this matter;

b)    Certify this matter as a class action pursuant to Rules 23(a) and

23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure;

c)    Appoint counsel as class counsel pursuant to Rule 23(g);

d)    Declare that Defendant DDS' policy and practice of denying notice

and an opportunity for a hearing to Puerto Rico-born applicants for Georgia

driver's licenses violates the Due Process Clause;

e)    Declare that Defendant DDS' policy and practice of arbitrarily and

discriminatorily retaining original identity documents provided by Puerto Rico-

born applicants without affording them notice and an opportunity for a hearing

violates the Due Process Clause;

f)      Declare that Defendant Woo's actions in arbitrarily and discriminatorily retaining Plaintiff's valid Puerto Rico driver's license and original identity documents without affording him notice and an opportunity for a hearing violates the Due Process Clause and caused Plaintiff compensable injury;

g)      Declare that Defendant DDS' policies and practices of often failing to issue driver's licenses to holders of valid Puerto Rico driver's licenses, of denying notice and an opportunity for a hearing, and of arbitrarily and discriminatorily retaining original identity documents provided by Puerto Rico-born applicants constitute, on account of race, color, ethnicity, national origin, or ancestry, a denial of equal protection of the laws in violation of the Equal Protection Clause;

h)      Declare that Defendant DDS' policies and practices of failing to exchange valid Puerto Rico driver's licenses, of denying notice and an opportunity for a hearing, and of arbitrarily and discriminatorily retaining original identity documents provided by Puerto Rico-born applicants abridge rights conferred under the Privileges and Immunities Clause;

i)      Declare that Defendant DDS' policies and practices of often failing to issue driver's licenses to Puerto Rico-born applicants meeting the requirements of the REAL ID Act, of denying notice and an opportunity for a hearing, and of arbitrarily and discriminatorily retaining original identity documents submitted by

29

these applicants exclude them from participation in, deny them the benefits of, and subject them to discrimination on the ground of race, color, or national origin in violation of Title VI of the Civil Rights Act of 1964;

j)      Issue a preliminary injunction, later to be made permanent, requiring that Defendant DDS (i) provide notice and an opportunity for a hearing to Puerto Rico-born applicants for Georgia driver's licenses; (ii) issue driver's licenses to holders of valid Puerto Rico driver's licenses; (iii) return forthwith original identity documents provided by Puerto Rico-born applicants; and (iv) cease discriminating on account of race, color, ethnicity, national origin or ancestry against Puerto Rico-born applicants;

k)      Grant Plaintiff and the putative class their reasonable costs of suit, reasonable attorney's fees, and any other expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law;

l)      Issue a preliminary injunction, later to be made permanent, restraining Defendant Woo from arbitrarily and discriminatorily retaining Plaintiff's valid Puerto Rico driver's license and original identity documents without due process of law;

m)      Grant Plaintiff actual damages for injury caused by the deprivation of his constitutional rights resulting from Defendant Woo's unlawful actions; and

n)  Grant such other relief as this Court may deem just and proper.


Respectfully submitted this 2nd day of July 2019.



/s/ Francisca D. Fajana                       /s/ Atteeyah Hollie
Francisca D. Fajana (NY # 5475405)*     Atteeyah Hollie (GA # 411415)[7]
Jorge Vasquez (NY # 5346416)*             Gerald Weber (GA # 744878)
LATINOJUSTICE PRLDEF                      SOUTHERN CENTER FOR
                                           HUMAN RIGHTS
475 Riverside Drive, Suite 1901              83 Poplar Street, NW
New York, NY 10115                           Atlanta, GA 30303
Tel: 212-219-3360                            Tel: 404-688-1202
Fax: 212-739-7576                            Fax: 404-688-9440
FFajana@latinojustice.org                    ahollie@schr.org
JVasquez@latinojustice.org                   gweber@schr.org


Kira Romero-Craft (FL # 49927)*
523 West Colonial Drive
Orlando, FL 32804
Tel: 321-250-2853
KRomero@latinojustice.org



* Pro Hac Vice Application Forthcoming

---

[7] Counsel certifies that this document has been prepared in Times New Roman font 14 point in accordance with LR 5.1 of the Northern District of Georgia.